CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 0 6 2007

JOHN F. CORCORAN, CLERK
BY: _J. Bugh_
    DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

|  |  |  |
|---|---|---|
| HAASHIM PIERSON, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 7:06cv00366 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | By: Hon. Michael F. Urbanski |
| Respondent. | ) | United States Magistrate Judge |

### REPORT AND RECOMMENDATION

Petitioner Haashim Pierson ("Pierson") brings this action under 28 U.S.C. § 2255, alleging that (1) counsel provided ineffective assistance throughout the criminal proceeding as well as by failing to file a notice of appeal; (2) as a result of counsel's ineffective assistance his guilty plea was not knowing and voluntary; and (3) in determining his sentence the court improperly considered drug quantities he proffered to the government. By Memorandum Opinion and Order entered January 17, 2007, the court found that it was unable to resolve the issue of whether counsel, H. David O'Donnell ("O'Donnell") was ineffective in failing to file an appeal on the existing record and, therefore, ordered an evidentiary hearing on the same.[1] By Order dated January 25, 2007, the court referred all dispositive matters to the undersigned Magistrate Judge to submit proposed findings of fact and a recommended disposition and designated him to preside over any necessary evidentiary hearings. An evidentiary hearing was conducted on June 19, 2007.

---

[1] The court declined to address Pierson's other claims, finding that if counsel was ineffective for failing to file to file a notice of appeal all other claims should be dismissed without prejudice. However, as the undersigned finds counsel was not ineffective on the appeal issue, Pierson's remaining claims are addressed herein.

Based on the evidentiary hearing testimony and the transcripts of Pierson's guilty plea and sentencing hearings, the undersigned concludes that petitioner has not met his burden of proving O'Donnell was ineffective for failing to file a notice of appeal. Pierson has failed to present any credible evidence suggesting he instructed counsel to file a notice of appeal. The evidence demonstrates that Pierson knowingly and voluntarily entered into a plea agreement expressly waiving his right to a jury determination of any sentencing guideline factors and to appeal any sentencing guideline issues. As counsel admittedly consulted with Pierson regarding the merits of filing an appeal despite the waiver after the sentencing hearing and because no credible evidence suggests that Pierson timely requested counsel to file an appeal, the undersigned finds counsel had no duty to note an appeal. Further, in light of the substantial benefit Pierson received for entering into the plea agreement and the potential for a further reduction in his sentence if he continued to assist the government, the undersigned finds a rational defendant in Pierson's position would not have appealed his sentence; thus, he was also not prejudiced by the alleged failure. Accordingly, the undersigned concludes counsel's failure to note an appeal was not not constitutionally deficient. Further, as Pierson knowingly and voluntarily waived his right to collaterally attack his conviction, Pierson's remaining claims for relief are barred. Therefore, the undersigned recommends that respondent's motion to dismiss be granted and Pierson's petition for relief be dismissed.

2

# I.

On October 25, 2004, Pierson pled guilty to conspiracy to distribute fifty (50) grams or more of cocaine base, using and/or carrying a firearm during and in relation to a drug trafficking crime, and felony possession of a firearm. Transcript of Guilty Plea Hearing, October 25, 2004 [hereinafter Guilty Plea Tr.] at 5-6, 22-23, 47. The plea agreement, signed by petitioner, contained an express waiver of his right to a jury determination of any sentencing guideline issues, a waiver of his right to appeal all sentencing guideline issues, and a waiver of his right to collaterally attack his sentence. Plea Agreement ¶¶ 9-10. Those waivers were detailed again at the guilty plea hearing. Guilty Plea Tr. at 8, 32.

During the plea colloquy, Pierson, among other things, stated under oath that he had received a copy of the indictment, that he had discussed the charges and his case with counsel, that he was fully satisfied with his counsel's representation, that he had read the entire plea agreement before he signed it, that he understood everything in the agreement, that no one had made any offers or different promises or assurances to him to induce entry of the plea, that no one had forced him to enter the guilty plea, that he understood the maximum penalties for the offenses charged, that he understood he was waiving his right to appeal and to collaterally attack his sentence, and that he was pleading guilty because he was, in fact, guilty. Guilty Plea Tr. at 15-17, 21-25, 32, 37. Finding that Pierson was fully competent and capable of entering an informed plea and that his guilty plea was knowing and voluntary, the court accepted his plea. Guilty Plea Tr. at 48-49. Prior to the sentencing hearing, the government filed a written motion

under § 5K1.1 of the Federal Sentencing Guidelines for substantial assistance[2], and evidence in support of that motion was heard at the sentencing hearing on January 14, 2005. Transcript of Sentencing Hearing, January 14, 2005 [hereinafter Sent. Hr. Tr.] at 66-69. The court granted the § 5K1.1 motion. Sent. Hr. Tr. at 69. The court noted that the sentencing guideline range was 324 to 405 months for the conspiracy and felony possession crimes, plus an additional term of sixty months for the firearm in relation to a drug trafficking crime. Id. at 91. However, the court afforded Pierson the benefit of his cooperation, and he was ultimately sentenced to a term of 240 months which consisted of 180 months on the conspiracy conviction, 120 months on the firearm in relation to a drug trafficking crime, to run concurrently with the conspiracy term, and an additional sixty months to be served consecutively to his other terms of imprisonment. Id. The Judgment Order was signed on February 6, 2005 and entered February 7, 2005; Pierson did not note an appeal. See Docket Entry No. 141.

Pierson then filed this § 2255 motion on June 12, 2006, claiming counsel provided ineffective assistance throughout all phases of the "pre-trial judicial proceedings," including all matters involving the plea agreement; counsel failed to object to a post-trial sentencing matter, namely the drug weight attributed to petitioner; and counsel failed to file an appeal after receiving written and verbal requests to do so. Pierson also alleges that because counsel was ineffective his guilty plea was not knowing and voluntary. Finally, he contends his right against self-incrimination was violated in that information he proffered to the government was utilized by the probation officer in determining the quantity of drugs attributable to the petitioner for

---

[2]Counsel stated at the hearing that this motion was filed under seal on or about December 6, 2004, but it is not docketed on the court's electronic filing system.

4

purposes of determining the guideline sentence. On January 17, 2007, the court entered a Memorandum Opinion and Order ordering an evidentiary hearing on the issue of whether Pierson asked his attorney to file an appeal. Further, finding that the remaining claims in a habeas petition should be dismissed without prejudice if a district court grants a petitioner's habeas motion due to counsel's failure to file a direct appeal, the court did not reach the merits of Pierson's other ground for relief. See Docket Nos. 8, 9. An evidentiary hearing was held on June 19, 2007. See Docket No. 19.

## II.

Pierson testified at the evidentiary hearing that prior to signing the plea agreement O'Donnell reviewed all the provisions of the plea agreement with him, including the appeal and collateral attack waivers, and he independently read the entire plea agreement. He also testified that O'Donnell advised him that entering into a plea agreement with the government and continuing to cooperate with the government was in his best interest as in doing so he had the best opportunity to receive a lesser sentence. He continued that O'Donnell advised him that he expected his guideline sentence to be about twenty years, but that if he continued to cooperate and the government moved for a § 5K1.1 reduction, he should receive only about ten years.

Pierson testified that he did not recall that the guideline range for his crimes was thirty years to life imprisonment, but after being reminded that during the guilty plea hearing he was advised by both the judge and the prosecuting attorney of the mandatory maximum and minimum sentences on his charges, he acknowledged this. Likewise, after being reminded that the government did in fact make a § 5K1.1 motion, which the court granted, Pierson conceded he

was given a sentence much less than the guideline sentence. Nonetheless, Pierson testified that he was so stunned by the magnitude of his ultimate sentence he wanted to "continue to fight."

Accordingly, when he received O'Donnell's February 8, 2005 letter advising him of his right to appeal, Evid. Hr. Gov't Ex. 1., on February 10, 2005, he immediately penned a letter to O'Donnell that same day. Evid. Hr. Pet. Ex. 1. Pierson asserts this letter informed O'Donnell that he wanted O'Donnell to file an appeal, pursue a Rule 35 motion, and continue to facilitate communication with the government and Pierson for purposes of a Rule 35 motion. Pierson points to the following passage in that letter which he asserts expresses his desire to appeal: "I've done everything you ask of me, now I'm askn (sic) you to do what I'm askn (sic) you, which is to put in the motion you need to so we can Fight some of this stuff - Hopefully Fritzgerald wont (sic) protest, and agree with us due to the fact I help him in ways he ask me too (sic). Maybe we can get him to recommend 120 months and the judge oblige." Evid. Hr. Pet. Ex. 1.

Pierson testified that a couple of days after he wrote this letter, but within the ten day window for filing an appeal, he called O'Donnell from the Jail to ensure he had received the February 10, 2005 letter and that he understood that Pierson wanted him to file an appeal and pursue a Rule 35 motion. He also testified that during this conversation O'Donnell advised him that he had waived his right to appeal in his plea agreement and it would not be in his best interests to file an appeal and that, instead, Pierson should focus on providing additional information to the government with the hopes of securing a Rule 35 motion. Pierson stated that despite this, he told O'Donnell that he understood he had a right to appeal his sentence, and he wanted O'Donnell to note an appeal. Pierson then claimed that following this conversation O'Donnell advised him that his case was closed and he did not want to have any further

6

communication with him; thereafter, O'Donnell refused to accept his telephone calls and did not respond to his letters.

Pierson conceded that his February 10, 2005 letter does not actually contain the word "appeal," rather it refers to putting in the "motion." Pierson now contends that when he wrote "motion" he meant "appeal," and was not aware of the difference.

## III.

At the evidentiary hearing O'Donnell testified that Pierson was initially arrested on state charges and he had already proffered to the government as to his involvement in the drug conspiracy when O'Donnell was appointed to represent him on his federal charges. Accordingly, there were relatively few options available in terms of trial tactics and, after discussing the burdens of trial and Pierson's extensive prior criminal record with Pierson, Pierson opted to enter into a plea agreement with the government and make substantial efforts to assist the government in the prosecution of various other defendants to earn a § 5K1.1 motion. Pierson continued to cooperate with the government and, prior to the sentencing hearing, the government filed a written motion for substantial assistance under § 5K1.1.

Approximately two days before the sentencing hearing, United States v. Booker, 543 U.S. 220 (2005), was decided.[3] O'Donnell testified that he was unsure of the potential sentencing ramifications following the Booker decision and, therefore, asked the court to continue the

_____

[3]In Booker, the Supreme Court held that the Federal Sentencing Guidelines were unconstitutional to the extent they provided for enhanced sentences based on judicial fact finding by a preponderance of the evidence and, therefore, severed two provisions of the Guidelines that made the sentencing guidelines mandatory. 543 U.S. at 226.

sentencing hearing to allow him time to explore these changes. The court denied the motion, and

Pierson was sentenced on January 14, 2005. See Docket Entry Nos. 131, 134. During the

sentencing hearing, O'Donnell elicited testimony from the case agent supporting the

government's § 5K1.1 motion, and the court ultimately granted the motion. Sent. Hr. Tr. 66-69.

O'Donnell also presented mitigating evidence of Pierson's troubled home life and childhood,

letters of support, and certificates evincing that Pierson had completed substance abuse and anger

management courses. Id. at 70, 77-78. Additionally, O'Donnell argued that Pierson had

accepted responsibility for his criminal behavior and was making efforts to atone for it by

assisting the government. Id. at 78-79. In sentencing Pierson, the court noted that the guideline

sentence range was 324 to 405 months, plus a mandatory minimum term of sixty months to be

served consecutive to any sentence imposed for using a firearm in relation to a drug trafficking

crime, but that in light of his "considerable assistance" to the government some reduction in that

term was warranted. Pierson was sentenced to a total of 240 months. Id. at 91.

O'Donnell testified that although he had advised Pierson of the guideline range for his

crimes, he and Pierson were stunned by the sentence imposed, as he had hoped that Pierson

would received a more substantial sentence reduction for his efforts to assist the government.

However, he specifically recalled Pierson commenting after the sentence that he believed the

length of his sentence was due to his prior criminal history.[4] Regardless, the 240 month sentence

was within the guideline range.

---

[4] The record established that at the time Pierson committed the underlying criminal offenses he was on parole out of New York for an armed robbery conviction. Guilty Pl. Hr. Tr. at 43; Pre-Sentence Report at ¶¶ 39, 44.

8

On February 6, 2005, the court entered its Judgment Order, see Docket Entry No. 141, and on February 8, 2005, O'Donnell sent a copy of the Judgment Order to Pierson. Evid. Hr. Gov't Ex. 1. In the accompanying letter, O'Donnell advised Pierson he had ten days from the date of entry of judgment to note an appeal. Id. However, O'Donnell continued that despite this ability to appeal, he did not advise it because there were no valid grounds for an appeal. Id. He also reminded Pierson that because the plea agreement waived the right to appeal, any appeal would be limited to alleged constitutional violations. Id. O'Donnell noted that Pierson's sentence was higher than they hoped based on four factors, (1) for more than a year Pierson and his co-conspirators had operated a retail operation for the sale of narcotics; (2) the amount of drugs sold; (3) some of his co-conspirators had traded guns for narcotics; and (4) Pierson's prior criminal history. Id. O'Donnell closed in advising Pierson that if he wanted to appeal despite his advice to the contrary, Pierson needed to inform him by February 16, 2005.

The following day, on February 9, 2005, Pierson called O'Donnell. Evid. Hr. Gov't Ex. 2. O'Donnell testified that he was surprised by the call, and he asked Pierson if he had received the February 8, 2005 letter. Pierson stated that he had not, but was calling to advise O'Donnell that he had spoken to Ray B. Fitzgerald, Assistant United States Attorney, regarding the continuation of Pierson's efforts to assist the government and the possibility of a Rule 35 motion. O'Donnell testified that during the course of the conversation he brought up the issue of noting an appeal and that he advised against it and Pierson agreed, and the remainder of the conversation centered on the potential for a Rule 35 motion. After concluding that call, O'Donnell called Fitzgerald, and he then penned another letter to Pierson. Evid. Hr. Gov't. Ex. 2. That letter was rather cryptic, as it included information pertaining to Pierson's upcoming

testimony at a co-conspirator's trial, but did note that O'Donnell had confirmed with the United States Attorney the information discussed in their earlier phone call. Evid. Hr. Gov't Ex. 3.

After receiving Pierson's February 10, 2005 letter, O'Donnell sent him a response on February 15, 2005. In that letter he noted that he was not giving up on Pierson and that he would continue to make efforts to help Pierson even after the appeal period expired. Evid. Hr. Gov't Ex. 4. Additionally, he noted again that he had spoken to Fitzgerald regarding the matter they had discussed on February 9, 2005, that Fitzgerald intended to file a Rule 35 motion, and that he, O'Donnell, cannot file such a motion. Id. He concluded by affirming that he too was surprised by the length of Pierson's sentence and that he remained hopeful that the government would take some action to provide some relief from that sentence based on Pierson's continued cooperation. Id.

There was no further correspondence or calls between Pierson and O'Donnell until O'Donnell received an undated letter, postmarked March 2, 2005. Evid. Hr. Gov't Ex. 5. In that letter Pierson stated that he "hope[d] you did appeal what I ask you in my last letter," and he mentions filing a 28 U.S.C. § 2255 motion on the basis that the amount of drugs attributed to him in the conspiracy is incorrect, he was convicted of selling drugs at a time he was incarcerated, and O'Donnell had not been adequately prepared to deal with Booker's impact on federal sentencing procedures. Id. He also notes that O'Donnell had advised him these issues had no merit. Id. O'Donnell responded on March 11, 2005, stating that Pierson had "made absolutely no request for an appeal" and he believed that in "desperation" Pierson was attempting to create a record suggesting that O'Donnell had failed to file an appeal despite Pierson's request otherwise. Evid. Hr. Gov't Ex. 6. Accordingly, he was rescinding his offer to continue to assist him after

the appeals period ran, including his efforts to assist with a potential Rule 35 motion, and that he would no longer accept any of Pierson's phone calls. Id. O'Donnell testified that thereafter he had no further communication with Pierson.

**IV.**

Criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish ineffective assistance of counsel, a defendant must show first that counsel's representation fell below an objective standard of reasonableness, and second, that counsel's defective performance prejudiced defendant. Id. at 688, 694. This same test is applicable to those situations where trial counsel was allegedly ineffective by failing to file a notice of appeal. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). To establish a Sixth Amendment violation based on counsel's failure to appeal, Pierson must prove that counsel was ineffective, and but for that ineffectiveness, an appeal would have been filed. United States v. Witherspoon, 231 F.3d 923, 926 (4th Cir. 2000) (citing Flores-Ortega, 528 U.S. 470).

Where a defendant instructs his attorney to file an appeal and counsel fails to do so, counsel's representation is per se ineffective. Witherspoon, 231 F.3d at 926; accord Flores-Ortega, 528 U.S. at 477 ("We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."). However, where the defendant neither instructs his attorney to note an appeal nor explicitly states that he does not wish to appeal, counsel's deficiency in failing to appeal is determined by asking whether counsel consulted with defendant about an appeal. Flores-Ortega, 528 U.S. at 478; Witherspoon, 231 F.3d at 926. Consult means "advising the defendant about

11

the advantages and disadvantages of taking an appeal and making a reasonable effort to discover the defendant's wishes." <u>Flores-Ortega</u>, 528 U.S. at 478. If counsel has consulted with defendant, the question of deficient performance is easily answered, as counsel performs in a professionally unreasonable manner only by failing to follow defendant's express instructions with respect to an appeal. <u>Id.</u>

There is no question that O'Donnell consulted with Pierson regarding an appeal. O'Donnell advised Pierson of his right to file an appeal by letter dated February 8, 2005 and again in the February 15, 2005 letter. Evid. Hr. Gov't Ex. 1 & 3. Additionally, Pierson conceded at the hearing that he and O'Donnell discussed the merits of filing an appeal after his sentencing hearing. He also testified that O'Donnell advised him that it was not in his best interests to appeal because he had waived his right to appeal in the plea agreement and filing an appeal would jeopardize the benefits he received under the plea agreement, namely the sentence reduction he earned for substantial assistance and the potential for a further reduction under Rule 35. Despite this advice, Pierson asserts that he insisted O'Donnell file an appeal, but O'Donnell refused. The undersigned finds that Pierson's assertion is not supported by the evidence.

Pierson cites to the following passage in the February 10, 2005 letter as indicating to O'Donnell that he wanted him to note an appeal: "I've done everything you ask of me, now I'm askn (sic) you to do what I'm askn (sic) you, which is to put in the motion you need to so we can Fight some of this stuff - Hopefully Fritzgerald wont (sic) protest, and agree with us due to the fact I help him in ways he ask me too (sic). Maybe we can get him to recommend 120 months and the judge oblige." Evid. Hr. Pet. Ex. 1. However, this passage continues ". . . can you have a talk with Fritzgerald, since he also agreed with me that he thinks I should have not got 240 . . . I

12

only have this one chance and I don't (sic) want to luz (sic) up on it, like it aint (sic) an oppourntity (sic)." Id.

Pierson testified that before writing this letter he had spoken to Fitzgerald regarding the opportunity to earn a Rule 35 motion by continuing to cooperate with the government. O'Donnell testified that on February 9, 2005, the day before Pierson wrote this letter, he spoke to Pierson on the phone regarding Pierson's conversation with Fitzgerald concerning the potential to earn a Rule 35 motion and that immediately after that conversation he spoke to Fitzgerald regarding the same. This is corroborated by O'Donnell's billing and phone records as well as the subsequent letter he wrote to Pierson. Evid. Hr. Gov't Ex. 2 & 3. However, Pierson claims that although the Rule 35 motion was discussed in the February 9, 2005 phone conversation, during this conversation he also told O'Donnell to file an appeal on the drug weight issue. The undersigned finds this testimony not to be credible.

O'Donnell and Pierson both testified that their strategy throughout the prosecution of the underlying criminal matter was to reduce Pierson's potential sentence by cooperating with the government, and it is clear Pierson hoped that by continuing his efforts after sentencing the government would help him by moving for a Rule 35 sentence reduction. Accordingly, the court finds it unbelievable that Pierson would jeopardize the substantial benefits he received under the plea agreement, including the three point reduction for acceptance of responsibility, the government's motion for substantial assistance which resulted in an approximate seventeen year

13

downward departure from the sentencing guidelines, and the opportunity to earn a subsequent Rule 35 motion, to file a baseless appeal.[5]

Further, such intent cannot be gleaned from the February 10, 2005 letter. Pierson conceded that nowhere in the letter does he ask O'Donnell to note an appeal, and instead, he claims that his reference to "put in the motion" meant file an appeal. Given the timing and content of this letter, however, there is no reason to read it to mean something other than what it plainly says. On its face, the letter is a request to O'Donnell to continue to work for a sentence reduction through a Rule 35 motion. Such a request is consistent with what was going on at the case at the time. Pierson testified he had extensive conversations with both Fitzgerald and O'Donnell concerning the potential to earn a Rule 35 motion before writing this letter, and the correspondence from O'Donnell to Pierson all indicate that the focus of their post-trial efforts would be on continuing to cooperate with the government. For instance, in the February 9, 2005 letter O'Donnell stated, "I was able to confirm the information we discussed with the US Attorney." Evid. Hr. Gov't Ex. 3. Again, in the February 15, 2005 letter O'Donnell wrote, "I

---

[5]The only issue which Pierson contends should have been raised on appeal is related to the court's consideration of sentencing guideline factors, namely the drug weight attributable to him in the conspiracy. However, as found herein, Pierson knowingly and voluntarily waived his right to a jury determination of any sentencing guideline factors, which would include drug weight, as well as his right to appeal any sentencing guideline factors or the court's application of sentencing guideline factors to the facts of his case. Therefore, the only claims Pierson could raise on appeal, despite his waiver, were that the sentence imposed was in excess of the maximum penalty allowed or was based on the consideration of a constitutionally impermissible factor such as race. United States v. Lemaster, 403 F.3d 216, 218 n.2 (4th Cir. 2005) (citing United States v. Marin, 961 F.2d 493 (4th Cir. 1992)). Pierson was sentenced below both the statutory maximum and the sentence guideline range. Pierson has not made any suggestion that he was sentence based upon consideration of any constitutionally impermissible factor. Accordingly, the undersigned finds that he had no non-frivolous grounds for appeal.

14

called Fitzgerald and discussed with him the matter we mentioned on the phone." As there would be no reason to advise or discuss the merits of an appeal with opposing counsel, the undersigned finds these conversations were most likely related to the government's willingness to file a Rule 35 motion if Pierson continued to cooperate. Evid. Hr. Gov't Ex. 4. Additionally, that letter also establishes that O'Donnell did not interpret Pierson's February 10, 2005 letter to indicate that Pierson should file an appeal, but instead, considered it to be a request that O'Donnell file a Rule 35 motion. Id. O'Donnell wrote, "I cannot file a Rule 35 Motion. Fitzgerald indicated to me that was his intention to do so." Id. Taken together, the evidence establishes that as of February 15, 2005, O'Donnell had received no reasonable indication that Pierson wanted him to note an appeal.

The undersigned finds Pierson's letter postmarked March 2, 2005 insufficient to establish that Pierson asked O'Donnell to file an appeal. Although Pierson wrote, "I hope you did appeal what I ask you in my last letter," as noted above, the undersigned finds Pierson's earlier letter, dated February 10, 2005, was not related to the issue of appeal, but instead was an effort to get O'Donnell to file a Rule 35 motion. Further, in the letter Pierson also notes he would like to file a habeas corpus motion "to try and give a [sentence] reduction" on the basis of ineffective assistance of counsel and the court's application of sentencing guideline factors. Evid. Hr. Gov't Ex. 5. There is simply nothing in the record before March 2, 2005 which suggests that Pierson asked O'Donnell to note an appeal, and the undersigned concludes this letter was most likely an attempt to establish a record of ineffective assistance to be used in subsequent habeas corpus proceedings.

15

Further, counsel was not ineffective for failing to note an appeal after receiving the March 2, 2005 letter. Criminal defendants must file their appeal with ten days after the date of the entry of judgment. Fed. R. App. P. 4(b)(1). These time periods are "mandatory and jurisdictional," Browder v. Dir., Dep't of Corr., 434 U.S. 257, 264 (1978) (quoting United States v. Robinson, 361 U.S. 220, 229 (1960)), and may only be extended upon a showing of good cause or excusable neglect. Fed. R. App. P. 4(b)(4). The ten day period for noting an appeal in Pierson's criminal case expired on February 18, 2005. There is no indication that as of that date Pierson had expressed any desire to appeal despite being advised by the sentencing court that he had a right to appeal and must note his appeal within ten days of entry of judgment and despite counsel's advice of the same. Sent. Hr. Tr. 93; Evid. Hr. Gov't Ex. 1. Further, Pierson has offered no evidence of good cause or excusable neglect which would support extending the ten day period to note an appeal. It is clear Pierson received the Judgment Order within the proscribed period of time, he was well advised of his right to note an appeal, he discussed the benefits of noting an appeal with counsel, and the first indication he gave of any interest in noting an appeal was well after the ten day window lapsed. As such, Pierson cannot establish he was prejudiced by counsel's failure to file an untimely notice of appeal after receiving the March 2, 2005 letter.

The evidence establishes that Pierson was advised of his right to appeal by both the court and counsel, he consulted with counsel regarding the benefits of filing an appeal, and Pierson expressed no desire to appeal until well after the ten day period for noting an appeal had expired. Therefore, the undersigned recommends that the court find that O'Donnell was not constitutionally deficient in failing to note an appeal.

16

## V.

A waiver of the right to collaterally attack a conviction or sentence is valid so long as it is voluntarily and knowingly made. United States v. Attar, 38 F.3d 727 (4th Cir. 1994), U.S. v. Lemaster, 403 F.3d 216, 220-223 (4th Cir. 2005). Thus, if Pierson's plea agreement and the accompanying waiver of the right to file a collateral attack were knowing and voluntary and his claims fall within the scope of that waiver, the court is precluded from reviewing Pierson's remaining claims for relief.

A defendant's sworn statements made during the plea colloquy and evidence that he discussed the terms of the plea agreement and waiver provision with counsel and fully understood them provide powerful evidence that the plea agreement and waiver are valid. See United States v. Brown, 232 F.3d 399, 405-06 (4th Cir. 2000). Pierson asserts that that his plea agreement and waivers were not knowing and voluntary and that he entered them as a result of his attorney's ineffective assistance and his own lack of understanding of the plea provisions and evidence against him. These claims contrast sharply with the statements Pierson made during his plea colloquy when he affirmed that counsel had reviewed all the provisions of the plea agreement with him, he had independently read the plea agreement, he completely understood all the terms of the plea agreement, he was fully satisfied with his attorney's representation and advice, and he did not disagree with the government's evidence against him and was pleading guilty because he was, in fact, guilty. Guilty Pl. Hr. Tr. 15-17, 21-25, 32, 37. Similarly, Pierson testified at the evidentiary hearing that he initialed and signed the plea agreement only after independently reading it and fully reviewing it with O'Donnell and that before signing it he understood that by entering into the plea agreement he was waiving his right to collaterally attack

17

his sentence. Nonetheless, he also testified that he only made the aforementioned statements during the plea hearing because O'Donnell advised him that the judge would ask him several questions regarding the plea agreement and to get the benefit of the plea agreement and the opportunity for a motion for substantial assistance from the government, he had to make such statements. The court finds this testimony unpersuasive. <u>Lemaster</u>, 403 F.3d at 222-23 (stating that absent extraordinary circumstances a defendant's solemn declarations made in open court during a Rule 11 plea colloquy are deemed to conclusively establish the truth of those statements). Accordingly, the undersigned finds Pierson's subsequent challenges to his plea to be "palpably incredible and patently frivolous or false," and that Pierson knowingly and voluntarily waived his right to collaterally attack his conviction as part of a knowing and voluntary plea agreement. <u>Id.</u>; <u>Brown</u>, 232 F.3d at 405-06.

Further, the undersigned concludes that none of Pierson's remaining claims fall outside the scope of his collateral attack waiver. The Fourth Circuit has distinguished a narrow class of claims which fall outside the scope of an enforceable waiver - namely that the sentence imposed is in excess of the maximum penalty provided by statute, that the sentence is based on a constitutionally impermissible factor such as race, or that the defendant was wholly deprived of the assistance of counsel at the proceeding after the entry of the waiver - and has applied them to both the consideration of waivers of the right to appeal and the right to collaterally attack a sentence. <u>Attar</u>, 38 F.3d at 732; <u>Lemaster</u>, 403 F.3d at 220 n. 2 (stating "we see no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights.")

All of Pierson's claims predating the entry of the guilty plea, namely counsel's alleged ineffective assistance as to the development of pre-trial matters and the plea agreement certainly

18

fall within the scope of the collateral attack waiver as Pierson certainly was well aware of the alleged deficiencies prior to entering into the plea agreement. Likewise, although perhaps less clear, Pierson's claims that the court improperly considered his statements made to the government regarding the amount of drugs distributed by the conspiracy and that counsel was ineffective for failing to object to certain information contained in the Pre-Sentence Report ("PSR") also fall within the scope of the waiver.

The plea agreement states that information provided by Pierson through a proffer or during efforts to cooperate with the government may be referred to by the presentence report preparer as evidence of Pierson's "version of the events leading to these charges." Plea Agreement ¶ 7. Accordingly, as the plea agreement clearly contemplated that the statements Pierson made as to drug quantities would be used by the presentence report preparer, and hence the court, in determining the amount of drugs attributable to the conspiracy, and as the plea agreement was knowing and voluntary, this claim falls within the purview of the collateral attack waiver.[6]

---

[6]To the extent Pierson argues that the presentence report preparer erred in calculating the drug weight attributable to the conspiracy, it lacks merit. In the PSR Pierson was assigned a base level offense of 38, based on drug quantity attributable to the conspiracy. U.S.S.G. § 2D1.1(c)(1) (stating that if the cocaine base amount attributable to the defendant is 1.5 kilograms or more a defendant shall be assigned a base offense level of 38). The Sentencing Guidelines do not provide for any higher base offense level for quantities of cocaine base in excess of 1.5 kilograms. See id.

Pierson claims that only 44 grams of cocaine base should be attributed to the conspiracy. However, he concedes that the drug quantity, at least 3.5 kilograms, was based on the statements he made to government officers as to the amount of drugs distributed in the conspiracy. Further, the evidence establishes that Pierson was a major distributer of cocaine base and supplied numerous dealers, he and his co-conspirators traveled to New York every three to seven days to purchase at least 100 grams of cocaine base from at least the fall of 2003 through their arrest in January 2004, and the investigators believe the conspiracy ultimately trafficked more than four

(continued...)

19

A claim of ineffective assistance at sentencing proceedings only falls outside the scope of the collateral attack waiver if the defendant has been completely deprived of counsel. Attar, 38 F.3d at 732-33. Claims that counsel was ineffective for failing to object to information contained in the presentence report do not suggest that the defendant was wholly deprived of counsel and, thus, such claims do not fall outside the scope of the collateral attack waiver. See Lemaster, 403 F.3d at 219-220 (finding that because defendant knowingly and voluntarily waived his right to appeal and collaterally attack his conviction, his claims that counsel was ineffective by failing to object to the presentence report and in failing to move for a downward departure were precluded from federal review). Therefore, Pierson's claim that counsel failed to formulate objections to the drug weight included in the PSR does not fall outside the scope of the waiver and, thus, is precluded from review.[7]

## VI.

Based on the foregoing, the undersigned finds that Pierson has failed to establish any credible evidence which suggests that counsel provided constitutionally deficient assistance in failing to note an appeal. Further the undersigned finds that Pierson's remaining claims for relief are barred by his knowing and voluntary collateral attack waiver. Accordingly, the undersigned

---

[6](...continued)
kilograms of cocaine base. PSR ¶¶ 13, 20, and 21. Therefore, the undersigned can find no error in the PSR drug weight determination.

[7]Further, to establish a claim of ineffective assistance of counsel at sentencing, Pierson must demonstrate that O'Donnell's performance was deficient and that but for counsel's errors, he would have received a lesser sentence. Strickland, 466 U.S. at 687-88, 692-94. However, as noted above, there was no basis for an objection to the determination of the drug weight or the court's consideration of the drug weight attributable to the petitioner in calculating a sentence. Thus counsel's alleged failure was not prejudicial and does not amount to ineffective assistance.

20

recommends that the respondent's motion to dismiss be granted and that Pierson's motion for relief pursuant to 28 U.S.C. § 2255 be dismissed in its entirety.

The Clerk of the Court is directed immediately to transmit the record in this case to the Honorable Samuel G. Wilson, United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to filed specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court is hereby directed to send a certified copy of this Report and Recommendation to petitioner and counsel of record.

**ENTER:** This 5th day of July, 2007.

Michael F. Urbanski
United States Magistrate Judge

21